Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1866 | **DATE** | 3/17/2000 |
| **CASE TITLE** | Marguerite Mitchem vs. GFG Loan Company, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss the Mitchem complaint (Doc. No. 12-1) is granted in part and denied in part. Plaintiff Mitchem has filed a motion for class certification (Doc. No. 10-1) is denied without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 2 0 2000 | 49 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/17/2000 | |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARGUERITE MITCHEM, <br> Plaintiff, <br> v. <br> GFG LOAN COMPANY, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 99 C 1866 |

DOCKETED
MAR 20

| | | |
|---|---|---|
| ROSE MARIE ROGERS, <br> Plaintiff, <br> v. <br> GFG LOAN COMPANY, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 99 C 3075 |

| | | |
|---|---|---|
| CARL V. SAMPSON, <br> Plaintiff, <br> v. <br> GFG LOAN COMPANY, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 99 C 3158 |

| | | |
|---|---|---|
| PAMELA M. TAYLOR, <br> Plaintiff, <br> v. <br> GFG LOAN COMPANY, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 99 C 3665 |

| | | |
|---|---|---|
| SHIRLEY FEATHERSTONE, <br> AMIR-ROBERT TARIK, and <br> CATHERINE M. STURGESS, <br> Plaintiffs, <br> v. <br> GFG LOAN COMPANY, et al., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 99 C 3981 |

## MEMORANDUM OPINION AND ORDER

On multiple occasions between June 1998 and March 1999, Plaintiffs in these lawsuits

obtained 14-day loans of up to $300 for nonbusiness purposes from Defendant GFG Loan

Company ("GFG"). The loans were secured by the borrowers' post dated checks and carried interest rates in excess of 300%. In these related cases, Plaintiffs challenge GFG's lending practices under a variety of federal and state law theories. Plaintiff bring claims on behalf of themselves and proposed class members.

This opinion addresses five complaints filed by the following Plaintiffs: (1) Marguerite Mitchem ("Mitchem"), (2) Rose Marie Rogers ("Rogers"), (3) Shirley Featherstone, Amir-Robert Tarik, and Catherine M. Sturgess (collectively "Featherstone"), (4) Pamela M. Taylor ("Taylor"), and (5) Carl V. Sampson ("Sampson") (collectively "Plaintiffs"). Featherstone *et al.* and Sampson sue as individuals; Rogers and Taylor sue on some counts solely as individuals and others as individuals and class representatives; and Mitchem sues on all counts as an individual and as a class representative.[1] Plaintiffs bring this action against GFG and

---

[1] Although Mitchem, Rogers, and Taylor all have made class allegations in their complaints, only Mitchem has moved for class certification at this point.

For Mitchem's federal class claims (Counts I-III, V), she seeks to represent those people with Illinois addresses who signed Defendant's loan agreements on or after March 22, 1998. For Mitchem's state law unconscionability claim (Count VI), she seeks to represent those people with Illinois addresses who signed Defendant's loan agreements on or after March 22, 1994. For Mitchem's Illinois Consumer Fraud Act claim (Count VII), she seeks to represent those people with Illinois addresses who signed Defendant's loan agreements on or after March 22, 1996.

For Rogers' federal class claims (Counts I-II), she seeks to represent those people with Illinois addresses who signed Defendant's loan agreements on or after June 28, 1998. For Rogers' class state law unconscionability claim (Count V), she seeks to represent those people with Illinois addresses who signed Defendant's loan agreements on or after June 28, 1994. For Rogers' class Illinois Consumer Fraud Act claim (Count VII), she seeks to represent those people with Illinois addresses who signed Defendant's loan agreements on or after June 28, 1996.

For Taylor's federal class claims (Counts II-III), she seeks to represent those people

(continued...)

John Does 1-10 who represent various unnamed officers, directors, shareholders, and managing agents of GFG (collectively "Defendant"). Plaintiffs allege that Defendant's business of making so-called "payday loans," violates (1) the Truth In Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.*, (2) the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693 *et seq.*,[2] (3) Illinois state common law rules against unconscionable contracts, and (4) the Illinois Consumer Fraud Act, 815 ILCS 505/2. Defendant now moves to dismiss each Plaintiff's federal claims under FED. R. CIV. P. 12(b)(6) and state claims under FED. R. CIV. P. 12(b)(1).[3] For the reasons set forth below, the court grants Defendant's motions to dismiss in part and denies them in part.

## FACTUAL BACKGROUND

Plaintiffs Mitchem, Rogers, Featherstone, Tarik, and Sampson reside in Chicago, Illinois. (Mitchem Compl. ¶ 3; Rogers Amend. Compl. ¶ 3; Featherstone Compl. ¶ 4-5;

---

[1](...continued)
who signed a document in the form represented by Exhibit 8 of Taylor's Complaint. For Taylor's state law unconscionability claim (Count IV), she seeks to represent those people who obtained a loan from Defendant with (i) disclosures in the form of Exhibit 8 of Taylor's Complaint and (ii) an annual percentage rate in excess of 500%; on or after June 2, 1994. For Taylor's Illinois Consumer Fraud Act claim (Count V), she seeks to represent those people who obtained a loan from Defendant with (i) disclosures in the form of Exhibit 8 of Taylor's Complaint and (ii) an annual percentage rate in excess of 500%; on or after June 2, 1997.

[2] Featherstone does not allege a violation of EFTA.

[3] Defendant GFG has filed separate motions to dismiss in response to Mitchem's, Rogers', Featherstone's, Sampson's, and Taylor's complaints. Given the five complaints' largely overlapping claims, the similarity in the arguments waged by Defendant in its motions to dismiss, and the fact that the claims involve the same lawyers, the court will consider all of Defendant's motions to dismiss in connection with all five complaints.

Sampson Amend. Compl. ¶ 3.) Plaintiff Sturgess resides in Country Club Hills, Illinois. (Featherstone Compl. ¶ 6.) Plaintiff Taylor resides in Dolton, Illinois. (Taylor Amend. Compl. ¶ 4.) Defendant GFG is an Illinois corporation which operates a "payday loan" establishment in Oak Park, Illinois. (Mitchem Compl. ¶ 4.) Defendants John Does 1-10 are officers, directors, shareholders and managing agents of GFG who Plaintiffs allege devised, authorized or profited from the lending practices challenged here. (*Id.* ¶ 5.)

"Payday loans" are short term, very high interest loans. (*Id.* ¶ 6.) The loans are typically two weeks in duration and carry annual percentage rates ranging from 300-600%. (*Id.*) When a GFG customer is granted a loan, the customer writes out a check, post-dated to the end of the loan period for the full amount that the customer is obligated to pay. (*Id.*) The full amount to be repaid is the "amount financed" plus the "finance charge" ( more commonly known as "interest"). For example, on November 6, 1998, Plaintiff Mitchem borrowed $150.00 and gave GFG a checked dated November 20, 1998 for $171.00 ($150.00(loan amount) + $21.00(finance charge)). (Ex. 2 to Mitchem Compl.) At the end of the two week period, the customer has the option of continuing the loan for an additional two week period by paying the interest. (*Id.*) For example, in the scenario given above, Mitchem was entitled to extend the loan, by paying $21.00 on November 20. (Ex. 3 to Mitchem Compl.) Plaintiffs allege that if a customer's check did not clear, GFG would "threaten the borrower with criminal or civil prosecution under the bad check statutes (which do not apply). GFG regularly threatens such prosecution." (Featherstone Compl. ¶ 10.)

4

The following describes the claims set forth in each count.

**No Security Interest** - The loan agreements state "Your post-dated check is security for this loan." Plaintiffs assert that this language violates 15 U.S.C. § 1638(a)(9) and Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. §226, because "under Illinois law, an ordinary check (as opposed to a certified check) does not operate as an assignment of the underlying bank account, and thus does not create any sort of security interest." (Mitchem Compl. ¶¶ 20(b), 21(b), 22; Rogers Amend. Compl. ¶ 16, Featherstone Compl. ¶ 20(b); Sampson Amend. Compl. ¶¶ 15(b), 16(b), 17; Taylor Amend. Compl. ¶ 15(b).)

**Failure to Disclose Security Interest** - Plaintiffs argue, in the alternative, that if the post-dated check can serve as collateral for the creation of a security interest, then Defendants are required under 15 U.S.C. § 1638(a)(9)(B) and 12 C.F.R. § 226.18(m) to disclose that fact to GFG's customers. (Rogers Amend. Compl. ¶ 17; Sampson Amend. Compl. ¶ 18; Taylor Amend. Compl. ¶ 16.)

**Conspicuousness** - Plaintiffs allege that Defendants violate the conspicuousness requirement of 15 U.S.C. § 1632(a) and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.17(a)(2), which require that "the terms 'finance charge' and 'annual percentage rate' . . . shall be more conspicuous than any other disclosure, except the creditor's identity. . . ." 15 U.S.C. § 1632(a); 12 C.F.R. § 226.17(a)(2). (Mitchem Compl. ¶¶ 20(a), 21(a); Rogers Amend. Compl. ¶ 18; Featherstone Compl. ¶ 20(a); Sampson Amend. Compl. ¶¶ 15(a), 16(a); Taylor Amend. Compl. ¶ 15(a).)

**EFTA** - Plaintiffs allege that Defendant violates 15 U.S.C. §1693k(1) of EFTA by

using a loan agreement which requires "authorization of electronic funds transfer as a condition of credit." (Mitchem Comp. ¶ 57; Rogers Amend. Compl. ¶ 20; Sampson Amend. Compl. ¶ 20; Taylor Amend. Compl. 18.) EFTA states that "[n]o person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers. . . ." 15 U.S.C. §1693k(1).

**Unconscionability** - Plaintiffs allege that Defendant's loans are unconscionable, in that Defendants (1) charge exorbitant interest rates; (2) fail to make proper disclosures; (3) violate EFTA; and (4) obtain post-dated checks to coerce payment by threatening enforcement of bad check laws. (Mitchem Compl. ¶¶ 67, 77; Rogers Amend. Complaint ¶¶ 43, 53, 56, 69; Featherstone Compl. ¶¶ 24, 27; Sampson Amend. Compl. ¶¶ 29, 32; Taylor Amend. Compl. ¶¶ 43, 53.)

**ICFA** - Plaintiffs allege that Defendant engages in deceptive and unfair practices, in violation of § 2 of the ICFA, in that Defendants (1) charge exorbitant interest rates; (2) fail to make proper disclosures; (3) violate EFTA; and (4) obtain post-dated checks to coerce payment by threatening enforcement of bad check laws. (Mitchem Compl. ¶¶ 67, 77; Rogers Amend. Complaint ¶¶ 43, 53, 56, 69; Featherstone Compl. ¶¶ 24, 27; Sampson Amend. Compl. ¶¶ 29, 32; Taylor Amend. Compl. ¶¶ 43, 53.)

For convenience, the court has created an itemized list of the counts asserted in these five related cases and attached it as an Appendix to this opinion.

# DISCUSSION

## I.   Standard of Review

In deciding a motion to dismiss for failure to state a claim, the court considers the allegations in the complaint to be true and draws all reasonable inferences in favor of the plaintiff. *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 824-5 (7th Cir.1999). The court should grant the motion to dismiss only if "no relief may be granted 'under any set of facts that could be proved consistent with the allegations'." *Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)).

### A.   TILA Claims

Plaintiffs allege that Defendant violated 15 U.S.C. § 1638 and § 1632(a) of TILA. In their § 1638 claims, Plaintiffs assert that, contrary to Defendant's statement in their loan agreements, the post-dated personal checks do not create a security interest. In the alternative, Plaintiffs Rogers, Sampson, and Taylor argue that if the post-dated check can serve as collateral for the creation of a security interest, Defendant violates 15 U.S.C. § 1638(a)(9) of TILA, and Regulation Z, 12 C.F.R. § 226.18, by failing to disclose this information on certain loan agreements.

With respect to their § 1632(a) claims, Plaintiffs allege that Defendant violates the conspicuousness requirement of Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. §226, which requires that "the terms 'finance charge' and 'annual percentage rate' . . . shall be more conspicuous than any other disclosure, except the creditor's identity. . ." 12

7

C.F.R. §226.18(m); *see also* 15 U.S.C. §1638(a)(9)(B). The court will address each of these claims in turn.

    1.    **15 U.S.C. §1638: Post-Dated Checks as a Security Interest (Mitchem, Counts I-IV), (Rogers, Count IV), (Featherstone, Count I), (Sampson, Count I), (Taylor, Count I)**

Plaintiffs allege that Defendant's standard form loan agreement violates 15 U.S.C §1638 and implementing Regulation Z which set out the disclosure obligations of creditors in closed-end credit plans. Regulation Z requires creditors to notify borrowers that "the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type." 12 C.F.R. §226.18(m); *see also* 15 U.S.C. §1638(a)(9)(B). Defendant's loan agreement states: "Your post-dated check is security for this loan." (Consumer Loan Agreement, Ex.'s 1-5 to Mitchem's Compl.; Ex.'s A-C to Rogers' Amend. Compl.; Ex.'s 1-3 and 4-8 to Featherstone's Compl.; Ex.'s 1-16 to Sampson's Amend. Compl.; Ex.'s 3-7 to Taylor's Amend. Compl.) Plaintiffs assert that this language violates §1638(a)(9) and Regulation Z because "under Illinois law, an ordinary check (as opposed to a certified check) does not operate as an assignment of the underlying bank account, and thus does not create any sort of security interest." (Mitchem Compl. ¶¶ 20(b), 21(b), 22; Rogers Amend. Compl. ¶ 16, Featherstone Compl. ¶ 20(b); Sampson Amend. Compl. ¶¶ 15(b), 16(b), 17; Taylor Amend. Compl. ¶ 15(b).)

The question whether Plaintiffs' allegations are sufficient to state claims is controlled by *Smith v. Cash Store Management, Inc.*, 195 F.3d 325 (7th Cir. 1999), an action brought against another Illinois purveyor of payday loans. Like Plaintiffs here, the *Cash Store*

*Management* plaintiff claimed that an ordinary post-dated check given in exchange for a payday loan could not serve as collateral in which a security interest could be created. *Cash Store Management*, 195 F.3d at 328. The Seventh Circuit rejected the claim, holding that an ordinary check can serve as collateral for a security interest. *Id.* at 330. According to the court, to secure a loan, property must "be of some value" to a creditor beyond merely evidencing indebtedness. *Id.* at 329. In the case of a check, "the rights created by state commercial law can, and in this case do, create some value in the instrument." *Id.* at 330. The court explained that state commercial law permits a creditor to negotiate a check to someone else, to present it to a bank for payment, or, in the event payment is denied, to seek damages under Illinois's bad check statutes. *Id.* (*referring* to Illinois bad check statute, 810 ILCS § 5/3-806). By virtue of these rights, the court concluded that a check can serve as collateral, and Cash Store Management was entitled to "lawfully assert under TILA that Smith's post-dated check was security for the loan." *Id.* at 331.

*Cash Store Management* controls the disposition of Plaintiffs' § 1638 TILA claims. Neither Rogers, Featherstone, Sampson, or Taylor attempt to distinguish *Cash Store Management*. With respect to these Plaintiffs' claims that the post-dated personal checks do not create a security interest, the court grants Defendant's motions to dismiss Count IV of Rogers's Amended Complaint, Count I of Featherstone's Complaint, Count I of Sampson's Amended Complaint, and Count I of Taylor's Amended Complaint.

Plaintiff Mitchem does attempt to distinguish *Cash Store Management*, insisting that her checks did not provide any additional value to GFG. (Plaintiff's Supplemental Brief on

Impact of *Smith v. Cash Store Management*, at 1-3.) Mitchem asserts that the chief basis for the court's conclusion that a check provides value to a lender beyond the value provided in an executed loan agreement is the recourse provided by Illinois's bad check statute, 810 ILCS 5/3-806. That statute provides that in the event a check is dishonored, a lender can recover a $25 returned check fee, collection costs, fees and interest. According to Mitchem, GFG's loan agreement itself gives GFG the right to collect all the same fees, costs, and interest allowed by §3-806, and thus is no better off for having obtained Mitchem's check. In the end, Mitchem submits, her check can not be said to have provided Defendant any extra value beyond that contained in the loan agreement.

The Seventh Circuit recently addressed and rejected this identical argument:

> Our opinion in *Smith* anticipated such an argument and supplies its answer: the check creates remedies and entitlements independent of the note. That the two are similar does not destroy their independence. "Upon default on the loan agreement, [the lender] would get use of the check, along with the rights that go with it. [The lender] could simply negotiate it to someone else. [The lender] could take it to the bank and present it for payment. If denied, [the lender] could pursue bad check litigation. Additional value is created through these rights because [the lender] need not renegotiate or litigate the loan agreement as its only avenue of recourse." Thus provisions in a loan agreement duplicating the legal remedies for a dishonored check do not make the check irrelevant, and referring to it as "security" does not violate the Truth in Lending Act.

*Hahn v. McKenzie Check Advance of Illinois, LLC*, 202 F.3d 998, 999-1000 (7th Cir. 2000) (quoting *Smith v. Cash Store Management, Inc.*, 195 F.3d at 330). In accordance with the Seventh Circuit's opinion in *Hahn*, Defendant's motion to dismiss the §1638 claims in Counts I-IV of Mitchem's complaint is granted.

10

2.   **15 U.S.C. § 1638, Failure to Disclose Security Interest, (Rogers, Count II), (Sampson, Count I), (Taylor, Count III)**

Rogers, Sampson, and Taylor argue, in the alternative, that if a post-dated check can serve as collateral for the creation of a security interest, and if Defendant is acquiring a security interest in its customers' post-dated checks, then under TILA, Defendant is required to disclose that fact to its customers. (Rogers Amend. Compl. ¶ 17; Sampson Amend. Compl. ¶ 18; Taylor Amend. Compl. ¶ 16.) Some versions of Defendant's loan agreement therefore violate TILA because they omit the language stating that "[y]our post-dated check is security for this loan." (Ex. C to Rogers' Amend. Compl.[4]; Ex.'s 14-16 to Sampson's Amend. Compl.; Ex. 8 to Taylor's Amend. Compl. ¶ 16.) Regulation Z provides

> **Content of Disclosures**
> For each transaction, the creditor shall disclose the following information as applicable:
> (m) **Security Interest.** The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type. . . .

12 C.F.R. § 226.18. Moreover, 15 U.S.C. § 1638(a)(9) states:

> (a)   **Required disclosures by creditor**
> For each consumer credit transaction other than under an open end credit plan the creditor shall disclose each of the following items, to the extent applicable:
> (9) Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased

---

[4]   Exhibit C to Rogers' Amended Complaint is a loan agreement without the security interest language. The court notes the copy of this document attached to Rogers' pleading is <u>not signed</u>. The form does, however, include identifying information concerning Rogers (for example, her name, address, Social Security #, and an internal account number).

11

> as a part of the credit transaction, or (B) property not purchased
> as a part of the credit transaction identified by item or type . . .

15 U.S.C. § 1638(a)(9).

In response to Plaintiffs' assertion that these provisions require disclosure, Defendant's only argument is one of semantics. Defendant argues that the post-dated checks only provide "security for a loan" and not a "security interest." The court is unpersuaded. In light of the Seventh Circuit's holding in *Smith v. Cash Store Management, Inc.*, 195 F.3d 325, 330 (7th Cir. 1999) that a post-dated check can in fact constitute security for a loan, this court concludes that Regulation Z and § 1638(a)(9) require disclosure. With respect to Defendant's alleged failure to disclose that GFG was taking a security interest in the post-dated checks, Defendant's motions to dismiss Count II of Rogers' Amended Complaint, Count I of Sampson's Amended Complaint and Count III of Taylor's Amended Complaint are denied.

3.  **15 U.S.C. § 1632(a), Conspicuousness Requirement (Mitchem, Counts I-II, IV), (Rogers, Counts II, IV), (Featherstone, Count I), (Sampson, Count I), (Taylor, Count I)**

Plaintiffs' second TILA-related claims challenge Defendant's loan agreements as failing to comply with the Act's conspicuousness requirements. Regulation Z requires that "the terms 'finance charge' and 'annual percentage rate' . . . shall be more conspicuous than any other disclosure, except the creditor's identity . . . ." 12 C.F.R. § 226.17(a)(2); *see also* 15 U.S.C. § 1632(a). Plaintiffs allege that Defendant has violated this provision in that, on several loan agreement forms, the term "finance charge" or both "finance charge" and "annual percentage rate" are no more prominent than other terms such as "amount financed" and

12

"total of payments."[5] (Mitchem Compl. ¶¶ 20(a), 21(a); Rogers Amend. Compl. ¶ 18; Featherstone Compl. ¶ 20(a); Sampson Amend. Compl. ¶¶ 15(a), 16(a); Taylor Amend. Compl. ¶ 15(a).) Defendant claims that Plaintiffs' TILA claims under § 1632(a) are deficient because they fail to allege actual damages. (Defendant's Supplemental Brief in Support of Defendant GFG Loan Company's Motion to Dismiss, at 4-6.) Defendant submits that § 1640 statutory damages[6] are not available for TILA claims premised on § 1632(a).

As Plaintiffs point out, the Seventh Circuit recently held that an "allegation that a particular disclosure is 'more conspicuous' than the finance charge or annual percentage rate states a claim on which relief may be granted." *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d

---

[5]     Rogers does not claim that the loan agreements attached to her complaint in Ex.'s A-C violate TILA's conspicuousness requirements. Indeed, the court notes that the terms "annual percentage rate" and "finance charge" in those documents are displayed with prominence and more conspicuously than all other required disclosures under § 226.18 (a)-(r). (Ex.'s A-C of Rogers' Amend. Compl.) Rather, Rogers alleges that "certain other forms of loan agreements and Truth In Lending disclosure statements used by GFG during the relevant period" violate "the Truth in Lending Act, 15 U.S.C. §1638, and Federal Reserve Board Regulation Z, 12 C.F.R. §§ 226.17-226.18." (Rogers Amend. Compl. ¶ 18.) As Rogers has failed to submit any loan agreements containing violating language which she signed, the court dismisses her conspicuousness claims under 12(b)(1) for lack of standing. *See Kedziora v. CitiCorp Nat'l Serv., Inc.*, 780 F.Supp. 516, 523 (N.D.Ill. 1991) (holding that plaintiff bringing a claim under TILA had no standing to litigate the reasonableness of a lease provision which was not applicable to him or her). The court also holds that Rogers has no standing to pursue the conspicuousness claim on behalf of the class. As Defendants note, "to have standing to sue as a class representative it is essential that the plaintiff must be part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Committee To Stop The War*, 418 U.S. 208, 216 (1974) (citations omitted). Thus, the courts dismisses Rogers' conspicuousness claims in Count II and Count IV.

[6]     15 U.S.C. § 1640 provides statutory damages for violations of specifically enumerated sections of TILA.

511, 514 (7th Cir. 1999). In a related case, however, the Seventh Circuit has also recently held that a plaintiff is not entitled to statutory damages for violations of the conspicuousness requirements of §1632(a) and Regulation Z. *Brown v. Payday Check Advance, Inc.*, 202 F. 3d 987, 992 (7th Cir. 2000). The court there explained:

> Failure to emphasize the typeface of "finance charge" and "annual percentage rate" violates § 1632(a). . . . Section 1640(a) says that statutory damages are available "only" for violations of enumerated subsections and rules. Section 1632(a) is not on that list. Whether Congress should have included it, or would have done so had it thought more fully, does not affect interpretation of the law it actually enacted. Even if its omission is a legislative oversight, the fact remains § 1632(a) is not on the list. Because all of the formal details prescribed by § 1632 are "in connection with" disclosures under § 1638, omission from the list means no statutory damages.

*Id.* at 991-92. The mandate of *Brown* is clear; failure to allege actual damages for a TILA claim premised on a § 1632(a) violation necessitates dismissal. Inasmuch as Plaintiffs have not alleged actual damages in conjuncture with their § 1632 TILA claims, the court dismisses Counts I-II and IV of Mitchem's Complaint, Count I of Featherstone's Complaint, Count I of Sampson's Amended Complaint, and Count I of Taylor's Amended Complaint.[7]

**B. EFTA Claims (Mitchem, Count V), (Rogers, Counts I and III), (Sampson, Count II), (Taylor, Count II)**

Plaintiffs allege that Defendant's loan agreements violate EFTA by "requiring authorization of an electronic funds transfer as a condition of credit." (Mitchem Comp. ¶ 57; Rogers Amend. Compl. ¶ 20; Sampson Amend. Compl. ¶ 20; Taylor Amend. Compl. 18.)

---

[7] As noted in footnote 5, Counts II and IV of Rogers' Amended Complaint are also dismissed.

EFTA states that "[n]o person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers. . . ." 15 U.S.C. §1693k(1).

By definition,

the term "electronic funds transfer" is any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. §1693a(6). EFTA also provides a definition for "preauthorized electronic fund transfer": the term 'preauthorized electronic fund transfer' means an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9).

Plaintiffs argue that the following paragraph in Defendant's form loan agreements authorizes electronic funds transfer as a condition of credit:

AUTHORIZATION AGREEMENT FOR PREARRANGED PAYMENTS: By signing below, Borrower authorizes Lender to effect payments owed by Borrower to Lender as such amounts come due by initiating debit entries to Borrower's account indicated below in the bank indicated below (hereafter 'Bank') and authorizes Bank to accept any debit entries initiated by Lender to such account without responsibility for correctness thereof. By signing this agreement, Borrower acknowledges that Borrower has read the Agreement, understands it, and agrees to all its terms and conditions.

(Ex. 6 to Mitchem's Compl.; Ex.'s A-C to Rogers' Amend. Compl., Ex.'s 11-16 of Sampson's Amend. Compl.; Ex. 8 to Taylor's Amend. Compl.) Below this paragraph the loan documents provide spaces for the following information:

Bank:_____  City:_____  State:_____  Check #:_____

(*Id.*)  Although none of the forms is complete, several do include the name of the borrower's bank and identify a check number (presumably, the number on the post-dated check to secure the loan).[8]

Defendant argues that this language does not run afoul of EFTA for several reasons, none of which the court finds persuasive.  First, Defendant notes that the loan agreements only ask for check numbers, and do not require the borrower to provide a bank account number from which an electronic fund transfer may be effected.  Defendant concludes that "the extension of credit . . . was not conditioned upon a preauthorized electronic fund transfer."  (Memorandum in Support of Defendant's Motion to Dismiss, at 14.)  As Plaintiff notes, however, Defendant could obtain borrowers' bank account numbers from their post-dated checks.  (Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 15.)

Defendant argues further that both 15 U.S.C. §1693a(9) and Regulation E, 12 C.F.R. § 205, specifically limit the scope of EFTA to loans which require repayment by electronic means on a pre-authorized *recurring* basis.  Defendant point out that the loans they provide

---

[8]    In Mitchem's loan agreement, the word "CITIBANK" appears in the "Bank" space and the number in the "Check #" space is illegible; on Rogers' loan agreements, "FED CTR EMPL. C U" appears in the "Bank" space, and "154," "160," and "175" appear in the "Check #" space for exhibits A, B, and C; on Sampson's loan agreements, "FIRST OF CHGO" appears in the "Bank" space and the numbers in the "Check #" spaces are illegible, and on Taylor's loan agreement "CREDIT UNION ONE" appears in the "Bank" space, and "513" appears in the "Check #" space. (*Id.*)

are closed-end, two-week loans, which "by definition would not require 'recurring' debits." (Plaintiffs' Supplemental Reply Brief In Opposition to GFG's Motion to Dismiss the EFTA Claim ("Pls.' Supp. Reply"), at 1.) Plaintiff replies that "the agreement expressly provide for extensions which would require debits to pay for the finance charge." (Pls.' Supp. Reply, at 2.) Specifically, Plaintiffs note that certain agreements provide for rollover loans. (Pls.' Supp. Reply, at 2.) For example, there is language in the upper right-hand corner of certain loan agreements in question which reads "ROLLOVER # (3 allowed): (1) (2) (3)." (Ex. 6 to Mitchem's Compl.; Ex.'s 14-16 to Sampson's Amend. Compl.; Ex. 8 to Taylor's Amend. Compl.)[9] Regardless of whether the option to "rollover" demonstrates that fund transfers would be "recurring," the court notes that the broad language in Defendant's loan agreement itself suggests repeated or recurring debits; the document states: "By signing below, Borrower authorizes Lender to effect payments owed by Borrower to Lender as such amounts come due by initiating debit entries to Borrower's account." In this court's view, the phrase "as such amounts come due" suggests that the "debit entries" may well be "recurring" for purposes of §1693a(9) and Regulation E.

Lastly, Defendants argue that the transactions in this case were originated by checks and, therefore, do not qualify as electronic transfers. (Def. Supp. Reply, at 1.) Defendant points out that an electronic funds transfer is "any transfer of funds, *other than a transaction originated by check*, draft, or similar paper instrument." (*Id.*) (citing 15 U.S.C. §1693a(6)).

---

[9]     None of the loan agreements attached to Rogers' Amended Complaint contain the rollover language.

This court agrees with Plaintiffs, however, that, in fact, the transactions were "originated by a note," not a check; "GFG merely required borrowers to tender a post-dated check as security for the loan." (Pls.' Supp. Reply, at 2.)   In any case, the reference in § 1693(a)(b) is to the transactions involved in *repayment* of the loan, not to the transactions by which the loan was made.[10]

The court acknowledged that neither the "AUTHORIZATION AGREEMENT FOR PREARRANGED PAYMENTS" nor any other part of the loan agreement contains the precise terms "electronic fund transfers," "electronic terminal," "telephonic instrument," or "computer or magnetic tape."   (Defendant's Reply in Support of Motion to Dismiss (hereinafter "Def. Reply"), at 12.)  The court concludes, nevertheless, drawing all inferences in favor of Plaintiffs, that the ambiguous language quoted above could authorize a transfer in violation of EFTA.   *See Marshall-Mosby v. Corporate Receivables, Inc.*, No. 99-1217, __F.3d__, 2000 WL 198441 * 3 (7th Cir. Feb. 22, 2000) (reversing district court's dismissal of FDCPA claim where "it was possible to imagine evidence consistent with the allegations of the complaint that would establish confusion.")  For example, it is not exactly clear what is meant by the phrases "PREARRANGED PAYMENTS," "initiating debit entries to Borrower's account," or "authorizes Bank to accept any debit entries initiated by Lender to such account."  A fundamental tenet of contract interpretation is that ambiguities must be

---

[10]    To the extent this conclusion is at odds with the one reached by the court's colleague, Judge William Hibbler, in *Hill v. GFC Loan Co.*, No. 99 C 2453 (N.D. Ill. February 15, 2000), the court respectfully disagrees.

construed against the drafter. *Bourke v. Dunn, & Bradstreet, Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (*quoting Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 478, 693 N.E.2d 358, 368 (1998) ("any ambiguity in the terms of a contract must be resolved against the drafter of the disputed provision."). Taking all well-pleaded allegations as true and drawing inferences in favor of Plaintiffs, the court holds that there is sufficient ambiguity in the language used in Defendant's loan agreement to warrant denial of Defendant's motions to dismiss Count V of Mitchem's Complaint, Counts I and III of Rogers' Amended Complaint, Count II of Sampson Amended Complaint, and Count II of Taylor's Amended Complaint.

      C.    **State Law Claims (Mitchem, Counts VI-VII), (Rogers, Counts V-VIII), (Featherstone, Counts II-III), (Sampson, Counts III-IV), (Taylor, Counts IV-V)**

      The Plaintiffs assert that this court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a). Ordinarily, the court will exercise such jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367. There are exceptions, however. Section §1367 (c) permits the court to decline to exercise supplemental jurisdiction where

      (1) the claim raises a novel or complex issue of State law,
      (2) the claim substantially predominates over the claims or claims which the district court has original jurisdiction,
      (3) the district court dismissed all claims over which it has original jurisdiction, or
      (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. 1367(c).

Plaintiffs' Illinois common law unconscionability and Consumer Fraud Act claims are premised upon four alleged wrongful acts: (1) charging exorbitant interest rates; (2) failing to make proper disclosures in connection with those loans; (3) violating EFTA;[11] and (4) procuring post-dated checks to coerce payment by threatening enforcement of bad check laws. (Mitchem Compl. ¶¶ 67, 77; Rogers Amend. Complaint ¶¶ 43, 53, 56, 69; Featherstone Compl. ¶¶ 24, 27; Sampson Amend. Compl. ¶¶ 29, 32; Taylor Amend. Compl. ¶¶ 43, 53.) Defendant argues that the court should decline to exercise jurisdiction because the state claims substantially predominate over the TILA and EFTA federal claims and pose novel legal issues which are best left up to the Illinois courts and legislature to resolve. (Motion to Dismiss Mitchem Compl., at 3; Motion to Dismiss Rogers Amend. Compl., at 3; Motion to Dismiss Featherstone Compl., at 2-3; Motion to Dismiss Sampson Amend. Compl., at 3.)

The court's purview of the relevant case reveals not a single Illinois decision that concludes that a loan is unconscionable because the lender allegedly (1) charged exorbitant interest rates; (2) failed to make proper disclosure; (3) violated EFTA; or (4) procured post-dated checks to coerce payment by threatening enforcement of bad check laws. The court has, however, found a handful of cases in which courts in this district have declined to exercise supplemental jurisdiction on novel state claims, even where some federal claims survive a motion to dismiss. In *Aikens v. Talbot, Hovel & Assoc., P.C,* No. 96 C 2355, 1996 WL 675780 (N.D. Ill. Nov. 19, 1996), the plaintiff brought a claim under the Fair Debt

---

[11]    Featherstone et al. do not include the violation of EFTA on their list.

Collection Practices Act ("FDCPA") and asked the trial court to take supplemental jurisdiction over an Illinois Consumer Fraud Act claim. Despite the fact that the court recognized the factual allegations of each claim were intertwined, it declined to exercise supplemental jurisdiction over the Illinois Consumer Fraud Act claim due to the claim's novelty. The court stated:

> This court has found no cases which interpret the new Illinois law, nor have any been supplied to it by the parties, with respect to whether the provisions precluding claims for bodily harm injury include mental anguish or physical manifestations of mental anguish. Therefore, we are presented with a novel issue of state law, the resolution of which is more appropriately left to the courts of Illinois than undertaken by a federal district court.

1996 WL 675780 at 5.[12]

In a recent case dealing specifically with "payday loans," Judge Bucklo denied the defendant's motion to dismiss the federal TILA claims, yet declined to exercise supplemental jurisdiction on state claims stating, "[w]hether concealment or nondisclosure of an apparently lawful practice could be a violation of the Fraud Act is a novel issue of state law unsuitable for federal adjudication." *Gutierrez v. Devon Fin. Servs., Inc.*, No. 99 C 2647 (N.D. Ill. Sept. 29, 1999) (Ex. A to Defendant's Motion for Leave to Cite Additional Authority) (*see also*

---

[12]    *See also Schwartz v. System Software Assoc., Inc.*, 813 F.Supp. 1364 (N.D.Ill. 1993) (where plaintiff raised novel issue of whether "fraud-on-the-market" may be invoked as a substitute for actual reliance under Illinois law, trial court declined to exercise supplemental jurisdiction because issue raised a novel question best addressed by a state court); *Ohata v. Village of Morton Grove*, No. 92 C 8480, 1994 WL 329940 (N.D.Ill. July 6, 1994) (question of whether 725 ILCS 5/103-1 provided a private right of action presented a novel and somewhat complex issue of state law the resolution of which was more appropriately left to the state court)

*Smith v. Edgerton & Edgerton, et al.*, 99 C 1360 (N.D. Ill. June 15, 1999) (Ex. A to Defendant's Sur-Reply in Support of Motion to Dismiss) (dismissing all of the pending federal claims, the court observed that relinquishing the state law claims was "particularly apropos here where the plaintiff's claims are novel and involve a matter of state policy, namely, regulation of interest rates.") Similarly, in the instant case, the alleged wrongful acts on which the state claims are premised also present novel issues that form a sufficient basis for the court to decline to exercise supplemental jurisdiction.

The court declines to exercise supplemental jurisdiction because, in this court's view, the regulation of Illinois interest rates is better left to the Illinois courts and legislature. GFG Loan Company is licensed in accordance with and operates under the Illinois Consumer Installment Loan Act, 205 ILCS 670/1-et seq. Under that Act, and the Illinois Interest Act, 815 ILCS 205/4a, GFG is entitled to charge the rate of interest which the market will bear on loans it makes. Section 205/4a states in pertinent part:

> there shall be no limit on the rate of interest which may be received or contracted to be received and collected by . . . any lender licensed under . . . the Consumer Installment Loan Act . . .

Case law also suggests Plaintiffs' usury claim, apparently a common law claim, will require creative advocacy. Under Illinois law, "there is no usury in the absence of a law limiting the rate of interest, and a particular rate of interest is illegal only if it exceeds the statutory limit applicable in the particular case." *Sweeney v. CitiCorp Person to Person Financial Center, Inc.*, 157 Ill. App.3d 47, 54, 510 N.E.2d 93, 98 (1st Dist. 1987).

The wisdom of the Illinois legislature in removing interest rate limitations on the type

22

of loans at issue should be questioned, if at all, by the Illinois courts or by remedial legislative action. Defendant here notes that two Illinois House bills and three Illinois Senate bills were introduced in the 91st General Assembly addressing this type of short term loans. (House Bills, 2119 and 2189, Senate Bills, 358, 446 and 842, Appendix B to Motion to Dismiss Mitchem's Complaint.) Although these proposed bills are not law, they demonstrate that the Illinois legislature is currently considering proposed remedial legislation.

Lastly, in this court's view the state law claims predominate over the federal claims. The remedies available under Plaintiffs' federal claims, are much more restricted than the remedies available under the state law claims. In particular, under the unconscionability claims Plaintiffs seek a declaration that the interest rates charged were unconscionable. Such relief is not available under the federal claims. Likewise, Plaintiffs seek punitive damages under the Consumer Fraud Act claim. Again, no such relief is available or sought under the federal question claims. Those differences establish the predominance of Plaintiffs' state law claims, and militate in favor of the court's decision to decline to exercise its supplemental jurisdiction.

For the reasons cited above, the court invokes its discretion to decline supplemental jurisdiction over Plaintiffs' state law claims pursuant to §1367(c). Plaintiffs' state law claims based on unconscionability and the Illinois Consumer Fraud Act are accordingly dismissed without prejudice pursuant to 12(b)(1) for want of subject matter jurisdiction.

23

## CONCLUSION

Defendant's motion to dismiss the Mitchem complaint, 99 C 1866 (Doc. 12-1) is granted in part and denied in part. Defendant's motion to dismiss the Rogers complaint, 99 C 3075 (Doc. 3-1) is granted in part and denied in part. Defendant's motion to dismiss the Sampson amended complaint, 99 C 3158 (Doc. 5-1) is granted in part and denied in part. Defendant's motion to dismiss the Taylor amended complaint, 99 C 3665 (Doc. 5-1) is granted in part and denied in part. Defendant's motion to dismiss the Featherstone complaint, 99 C 3981 (Doc. 4-1) is granted.

As noted earlier in footnote 1, Plaintiff Mitchem has filed a motion for class certification. As her TILA claims have been dismissed, the court denies her motion for class certification, 99 C 1866 (Doc. 10-1) without prejudice. As set forth in footnote 2, some of the proposed classes overlap one another. The court directs that Plaintiffs' counsel prepare an amended complaint consistent with the rulings made by this court and an amended class certification motion.

ENTER:

Dated: March 17, 2000

REBECCA R. PALLMEYER
United States District Judge

24

# APPENDIX

The following is an itemized list of the counts for the 5 consolidated actions[1]:

## Mitchem (Complaint)

| | |
|---|---|
| I | TILA (Class) (No Security, Conspicuousness) (Ex.'s 1-2, 4) |
| II | TILA (Class) (No Security, Conspicuousness )(Ex. 3) |
| III | TILA (Class) (No Security) (Ex. 5) |
| IV | TILA (Mitchem) (No Security, Conspicuousness) (Ex.'s 2, 4) |
| V | EFTA (Class) (Ex. 6) |
| VI | Unconscionability (Class) |
| VII | ICFA (Class) |

## Rogers (Amended Complaint)

| | |
|---|---|
| I | EFTA (Class) (Ex. C) |
| II | TILA (Class) (Failure to Disclose Security Interest, Conspicuousness) (Ex. C) |
| III | EFTA (Class) (Ex.'s A-B) |
| IV | TILA (Rogers) (No Security Interest, Conspicuousness) (Ex.'s A-B) |
| V | Unconscionability (Class) |
| VI | Unconscionability (Rogers) |
| VII | ICFA (Class) |
| VIII | ICFA (Rogers) |

## Featherstone (Complaint)

| | |
|---|---|
| I | TILA (No Security Interest, Conspicuousness) |
| II | Unconscionability |
| III | ICFA |

---

[1]    Specific exhibit numbers are noted in parenthesis when Plaintiff directs a claim at a particular loan agreement. For example, while Count I and Count II of Mitchems' Complaint allege the same claims, "No Security Interest and Conspicuousness," Plaintiff specifically directs these claims at loan agreements located in Ex.'s 1-2, 4, and Ex. 3, respectively.

1

## Sampson (Amended Complaint)

I      TILA (No Security Interest, Ex.'s 1-16) (Conspicuousness, Ex.'s 1-8) (Failure to Disclose Security Interest Ex.'s 14-16)

II      EFTA(Ex.'s 11-16)

III      Unconscionability

IV      ICFA

## Taylor (Amended Complaint)

I      TILA (Taylor) (No Security Interest, Conspicuousness)(Ex.'s 3-7)

II      EFTA (Class) (Ex. 8)

III      TILA (Class) (Failure to Disclose Security Interest)(Ex. 8)

IV      Unconscionability(Class)

V      ICFA (Class)

2